UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

|  |  |
|---|---|
| JASON D., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION TO DENY DISABILITY BENEFITS** <br><br> Case No. 1:25-cv-00003 <br><br> Magistrate Judge Daphne A. Oberg |

Jason D.[1] brought this action for judicial review of the denial of his applications for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration.[2]  The Administrative Law Judge (ALJ) who addressed Mr. D.'s applications determined he did not qualify as disabled.[3]  Mr. D. argues the ALJ improperly considered evidence from a social security fraud investigation, and placed undue weight on that evidence, in assessing his residual functional capacity and the severity of his impairments.[4]  Mr. D. also contends the

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the court refers to the plaintiff by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 18–31, Doc. No. 12.)

[4] (*See* Opening Br., Doc. No. 18 at 1.)  Because the opening brief contains inconsistent page numbering, citations to this document reference the CM/ECF pagination.

Appeals Council should have remanded the case after he appealed the ALJ's decision, due to a change in the law affecting the determination that he could perform past work.[5]

As explained below, the ALJ permissibly considered the fraud investigation evidence, the ALJ's nonseverity finding was harmless, and substantial evidence supports the residual functional capacity determination.  Further, Mr. D.'s argument relating to past work is unavailing because the ALJ also found him capable of other work in the national economy.  Accordingly, the Commissioner's decision is affirmed.[6]

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[7]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[8]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[9] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is

---

[5] (*Id.* at 27–28.)

[6] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 6.)

[7] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[8] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[9] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

"more than a mere scintilla."[10]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[12]  And the court may not reweigh the evidence nor substitute its judgment for that of the ALJ.[13]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[14] An individual is considered disabled only if his impairments are so severe, he cannot perform his past work or "any other kind of substantial gainful work."[15]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) he has a severe medically determinable physical or mental impairment;

---

[10] *Id.* at 103 (citation omitted).

[11] *Id.* (citation omitted).

[12] *Lax*, 489 F.3d at 1084 (citation omitted).

[13] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[14] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[15] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) he has the residual functional capacity to perform past relevant work; and

5) he has the residual functional capacity to perform other work, considering his age, education, and work experience.[16]

In the first four steps, the claimant has the burden of establishing disability.[17] And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[18]

## PROCEDURAL HISTORY

Mr. D. applied for disability insurance benefits in November 2021, and he applied for supplemental security income in April 2022.[19] After an administrative hearing,[20] the ALJ issued a decision, finding Mr. D. not disabled and denying benefits.[21]

At step two of the sequential evaluation, the ALJ found Mr. D. had no severe impairments.[22] Specifically, the ALJ found Mr. D.'s medically determinable impairments

---

[16] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[17] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[18] *Id.*

[19] (*See* Tr. 18, 248-261.)

[20] (Tr. 36–77.)

[21] (Tr. 18–31.)

[22] (Tr. 21.)

of myopia, carpal tunnel syndrome, chronic pulmonary insufficiency (COPD), peripheral neuropathy, diabetes mellitus, obesity, hypertension, gastrointestinal system disorders, depressive disorder, and neurocognitive disorder were all nonsevere.[23]  But rather than denying Mr. D.'s claim at step two, the ALJ proceeded through the remaining steps of the sequential evaluation, treating Mr. D.'s COPD, peripheral neuropathy, diabetes mellitus, and obesity as if they were severe impairments.[24]  At step three, the ALJ concluded Mr. D.'s impairments did not meet or medically equal an impairment listing.[25]

The ALJ then found Mr. D. had the residual functional capacity to perform "medium work" with the following limitations: "frequent climbing of ramps, stairs, and ladders"; "occasional climbing of ropes and scaffolds"; and "frequent stooping, kneeling, crouching, and crawling."[26]  At step four, based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ concluded Mr. D. could perform past work as a dump truck driver, water truck driver, street sweeper, and "truck driver, heavy."[27]  But the ALJ also proceeded to step five and found, based on the expert's testimony, that Mr. D. was capable of other jobs in the national economy.[28]

---

[23] (Tr. 21–22.)

[24] (*See* Tr. 21.)

[25] (Tr. 23–24.)

[26] (Tr. 24.)

[27] (Tr. 28–29.)

[28] (Tr. 29–30.)

Accordingly, the ALJ found Mr. D. not disabled and denied his claims.[29]  This decision became final when the Appeals Council denied Mr. D.'s request for review.[30]

**ANALYSIS**

Mr. D.'s claims of error primarily relate to the ALJ's consideration of a Cooperative Disability Investigations[31] report.  The Office of the Inspector General opened an investigation following an anonymous complaint that Mr. D. was concealing work activity from the agency while his applications were pending.[32]  While the investigation revealed no evidence of work activity, investigators observed Mr. D. engaging in activities the ALJ later found inconsistent with his self-reported symptoms and limitations.[33]  For example, while Mr. D. claimed he needed supplemental oxygen 24/7 and only stopped using it to shower,[34] the investigators observed Mr. D. shopping and cleaning out his car without an oxygen device.[35]

Mr. D. claims the ALJ placed undue weight on the investigative report in finding his impairments nonsevere and in determining he had the residual functional capacity to

---

[29] (Tr. 30–31.)

[30] (Tr. 1–3.)

[31] The Cooperative Disability Investigations program investigates reports of social security fraud.  *See* https://oig.ssa.gov/cdi/ [https://perma.cc/SCS3-7868].

[32] (*See* Tr. 501–02.)

[33] (*See* Tr. 26–27, 503–09.)

[34] (*See* Tr. 24, 53–54, 487, 490.)

[35] (Tr. 503–09.)

perform medium work.[36]  He claims substantial evidence does not support the ALJ's

residual functional capacity determination.[37]  Mr. D. also argues the Appeals Council

should have remanded his case based on a change in the law relating to the ALJ's step

four determination that he could perform past work.[38]  As explained below, Mr. D. fails

to show reversible error at any step of the ALJ's decision.

### A.  Nonseverity Finding (Step Two)

An impairment is severe if it "significantly limits [a claimant's] physical or mental

ability to do basic work activities."[39]  This is a "de minimus" standard, and "only those

claimants with slight abnormalities that do not significantly limit any basic work activity

can be denied benefits without undertaking the subsequent steps of the sequential

evaluation process."[40]  "As long as the ALJ finds one severe impairment, the ALJ may

not deny benefits at step two but must proceed to the next step."[41]  And after step two,

the ALJ must consider the limiting effects of both severe and nonsevere impairments.[42]

---

[36] (*See* Opening Br., Doc. No. 18 at 1, 19–26.)

[37] (*See id.*)

[38] (*Id.* at 27–28.)

[39] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[40] *Langley*, 373 F.3d at 1123 (internal quotation marks omitted).

[41] *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[42] *Allman*, 813 F.3d at 1330; *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (providing all medically determinable impairments, including nonsevere impairments, are considered when assessing residual functional capacity).

Mr. D. asserts the ALJ found, "[w]ithout explanation," that he had no severe impairments.[43]  Mr. D. notes that an ALJ in a prior case covering a concurrent period found Mr. D. had five severe impairments which limited him to sedentary work.[44]  Mr. D. suggests the ALJ's lack of explanation and his decision's stark contrast with the prior decision indicates that, based on the investigative report, the ALJ rejected "all the medical evidence" in finding his impairments nonsevere.[45]

As an initial matter, the ALJ's step-two analysis does not mention the investigative report.[46]  But Mr. D. is correct that the ALJ's nonseverity finding is, at least partially, unexplained.  While the ALJ detailed why he found some impairments nonsevere, he gave no explanation for finding other impairments nonsevere— specifically, COPD, peripheral neuropathy, diabetes mellitus, and obesity.[47]  Nevertheless, he ALJ stated that "in the alternative," he would treat those four impairments "as if they had been found severe."[48]  He then proceeded through the remaining steps of the sequential evaluation.

---

[43] (*See* Opening Br., Doc. No. 18 at 20.)

[44] (*See id.* at 7, 20.)  Mr. D. voluntarily dismissed the prior case during an appeal, electing to pursue the present case instead.  (*See id.* at 7–8.)  He explains that if he had again been found capable of only sedentary work, he would have been eligible for benefits based on his age classification in the present case.  (*See id.* at 8.)

[45] (*Id.* at 20.)

[46] (*See* Tr. 21–22.)

[47] (*See id.*)

[48] (Tr. 21.)

Because the ALJ proceeded beyond step two, any error in finding Mr. D.'s impairments nonsevere—or in failing to explain this finding—is harmless.  An ALJ's "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe" and proceeds through the subsequent steps.[49]  While the ALJ in this case found no severe impairments, he treated some impairments as severe (in the alternative) and proceeded through the subsequent steps.  The Tenth Circuit has approved the use of alternative dispositions, noting they "generally benefit[] everyone" because "the Secretary relieves a pressing work load by resolving cases thoroughly once; the courts avoid successive, piecemeal appeals; and litigants are spared the protracted delays that result when a case drags on incrementally, bouncing back-and-forth between administrative (re)determinations and judicial review thereof."[50]

Accordingly, the ALJ's decision to proceed beyond step two, and treat some impairments as severe in subsequent steps, rendered any error in the nonseverity finding harmless.  Indeed, Mr. D. seems to acknowledge this in his briefing, stating the ALJ's step-two "deficit was quickly rectified" by the ALJ "assuming" a severe impairment.[51]  Mr. D. has shown no reversible error at step two.

---

[49] *Allman*, 813 F.3d at 1330.

[50] *Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir. 1994) (addressing an ALJ's use of alternative dispositions at steps four and five of the sequential evaluation).

[51] (Opening Br., Doc. No. 18 at 21.)

B. <u>Residual Functional Capacity Assessment</u>

    *1. Legal Standards*

A claimant's residual functional capacity (RFC) is the most he can do in a work setting considering his limitations.[52]  In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[53]  The ALJ considers all relevant medical and other evidence in the record.[54]

In determining a claimant's RFC, an ALJ must evaluate a claimant's self-reported symptoms using a two-step process.  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[55]  Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related

---

[52] *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[53] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[54] *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[55] SSR 16-3p, 2016 SSR LEXIS 4, at *3 (Mar. 16, 2016); *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b).

activities."[56]  In doing so, the ALJ "examine[s] the entire case record."[57]  The ALJ

considers factors such as: the claimant's daily activities; the duration, frequency, and

intensity of symptoms; medication taken and whether it alleviates the symptoms; and

other treatment or measures used to relieve the symptoms.[58]  The ALJ also considers

any inconsistencies between the claimant's statements and the rest of the evidence,

including the claimant's history, medical signs and laboratory findings, and statements

by medical sources and others.[59]

In determining RFC, an ALJ must also assess the persuasiveness of medical

opinions and prior administrative findings, based on the following factors:

(1) supportability (the objective medical evidence and supporting explanations

presented by the medical source); (2) the consistency of the opinion with evidence from

other medical and nonmedical sources; (3) the relationship with the claimant (including

its length, frequency, purpose, and extent—and whether it was an examining

relationship); (4) any specialization; and (5) any other relevant factors.[60]  The most

---

[56] SSR 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[57] SSR 16-3p, 2016 SSR LEXIS 4, at *9–10; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[58] SSR 16-3p, 2016 SSR LEXIS 4, at *18–19; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[59] 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

[60] *Id.* §§ 404.1520c(b), (c)(1)–(5), 416.920c(b), (c)(1)–(5).

important factors are supportability and consistency—the ALJ must explain how he evaluated both factors.[61]

### 2. Discussion

Mr. D. asserts the ALJ improperly relied on the investigative report to the exclusion of all other evidence in finding him capable of medium work.[62]  Mr. D. also claims neither the investigative report nor other substantial evidence supports the RFC determination.[63]  As explained below, neither argument is borne out by the record.

As a threshold matter, the ALJ permissibly considered the investigative report in evaluating Mr. D.'s RFC.  An ALJ must consider "descriptions and observations" of a claimant's functional limitations from nonmedical sources.[64]  The report fell within this category, where it contained the investigators' descriptions and observations of Mr. D.'s functional abilities.  And the Tenth Circuit has affirmed an ALJ's reliance on an investigative report in discounting a claimant's self-reported limitations.[65]

Next, the record does not support Mr. D.'s contention that the ALJ placed undue weight on the investigative report.  The ALJ applied the correct legal standards in

---

[61] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

[62] (*See* Opening Br., Doc. No. 18 at 19–21, 25–26.)

[63] (*See id.* at 19–20.)

[64] 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[65] *See Thomas v. Berryhill*, 685 F. App'x 659, 662 (10th Cir. 2017) (unpublished); *see also* Program Operations Manual System (POMS) DI 33025.036 (providing that a CDI report is considered "along with all other evidence," including in the subjective symptom evaluation).

evaluating Mr. D.'s self-reported symptoms, following the two-step process outlined above.  The ALJ considered Mr. D.'s testimony that he "uses a nebulizer every night and uses oxygen 24/7"; he "can carry 15 to 20 pounds but only for 5 or 10 feet"; he "takes his oxygen with him everywhere"; "the [tanks] are the biggest ones they make and weigh approximately 5 to 10 pounds"; "he loses his balance often and stumbles a lot"; "he has pain in his left shoulder, bilateral knees, and right wrist"; and "he is sore, has a hard time moving, and must be careful getting up and down."[66]  The ALJ determined Mr. D.'s impairments could reasonably be expected to cause his alleged symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence."[67]

In making this determination, the ALJ relied on not only the investigative report but also medical records and medical opinions.  For example, the ALJ found Mr. D.'s "physical respiratory complaints" not fully supported by physical examinations, which "repeatedly showed the claimant's lungs clear to auscultation bilaterally, with no wheezing, no crackles; no rhonchi; good air exchange; and no increased work of breathing."[68]  The ALJ also noted Mr. D. had "96% oxygen saturation on room air in September and November 2022; 97% in December 2022; 98% in January 2023; and

---

[66] (Tr. 24.)

[67] (*Id.*)

[68] (Tr. 26 (citing Tr. 460, 477, 521, 528, 538, 555, 570, 588, 608, 626).)

95% in April 2023."[69]  And he "ambulated with ease" during a psychological

examination.[70]  The ALJ then noted Mr. D.'s "allegations regarding his physical abilities

[were] in marked contrast with" the investigative report.[71]  The report indicated Mr. D.

"walk[ed] without oxygen and evidenced no struggle to do so"; he "had normal gait with

no medical aids to walk or breathe"; and he was "observed performing activities such as

manipulating his phone, crawling in his vehicle, bending down to get cans, and carrying

two oxygen tanks (one in each hand) off the ground."[72]  The ALJ concluded the "totality

of the record" did not support limitations beyond the assessed RFC of medium work

with postural limitations.[73]  This discussion shows the ALJ did not rely on the

investigative report to the exclusion of medical evidence.

Further, while the ALJ considered the investigative report in evaluating medical

opinion evidence, Mr. D. has identified nothing improper in the ALJ's evaluation.  The

ALJ considered a consultative examiner's opinion that Mr. D. would be "unsuitable" for

activities requiring: prolonged standing or walking, walking over uneven surfaces or

prolonged slopes, ladders and unrestrained heights, use of stairs, frequent squatting or

bending at the hips, or frequent fine motor skills.[74]  The ALJ found this opinion

---

[69] (*Id.* (citing Tr. 608, 616, 626, 636, 653).)

[70] (*Id.* (citing Tr. 487).)

[71] (*Id.* (citing Tr. 499–510).)

[72] (*Id.* (citing Tr. 504–08).)

[73] (*Id.*)

[74] (Tr. 27 (citing Tr. 490–98).)

14

unpersuasive.[75]  He acknowledged findings from the examination supported the examiner's opinion, including Mr. D.'s "poor activity tolerance, use of supplemental oxygen, positive straight leg raise, pain with raising his arms, and difficulty manipulating a coin."[76]  But the ALJ noted the examiner's opinion "appear[ed] to be based, in part, on [Mr. D.'s] reports of pain and tenderness in the cervical spine, left shoulder, right wrist, right knee, and left knee"—but "the record include[d] no imaging or testing that would support a related medically determinable impairment."[77]  And ALJ found the examiner's opined limitations inconsistent with observations from the investigative report, indicating Mr. D. "exhibit[ed] normal gait, [could] crawl and bend, and ha[d] no issue manipulating objects such as a phone."[78]  In other words, the ALJ found the opinion inconsistent with both the investigative report and the lack of other supporting medical evidence in the record.  The ALJ properly considered the investigative report in evaluating the consistency factor, and he did not rely on it to the exclusion of all other evidence.

The ALJ also considered a state agency medical consultant's prior administrative medical findings limiting Mr. D. to light work.[79]  The ALJ found this opinion "less than

---

[75] (*Id.*)

[76] (*Id.*)

[77] (*Id.*)

[78] (*Id.* (citing Tr. 499–510).)

[79] (*Id.* (citing Tr. 158–73).)  The ALJ also cited the investigative report in evaluating the state agency psychological consultant's findings, (*see id.*), but Mr. D. does not challenge the ALJ's mental RFC assessment.  Accordingly, this portion of the ALJ's decision is not addressed.

fully persuasive."[80]  The ALJ concluded the opinion lacked sufficient support—both because the consultant's explanation was inadequate,[81] and because the consultant's physical findings "[did] not support a reduction to light exertion."[82]  Specifically, the consultant referenced "evidence showing that [Mr. D.'s] A1C decreased, he was tolerating medication, he had good oxygen saturation, lungs clear to auscultation, and 20/20 vision."[83]  The ALJ then noted the consultant's findings were also inconsistent with Ms. D.'s abilities as described in the investigative report.[84]  Here, again, the ALJ permissibly considered the investigative report and did not exclusively rely on it in discounting the prior administrative findings.

Mr. D. suggests the ALJ should not have relied on the investigative report in finding him capable of medium work because it reflected only "momentary snippets of daily activity."[85]  But the investigative report contained observations of Mr. D.'s activities on three separate occasions, including one period of approximately forty minutes.[86]

---

[80] (*Id.*)

[81] The ALJ specifically noted that the consultant, Dr. Stevens, stated he "agreed with the prior assessment of Dr. Heaton who found insufficient evidence based on the marked inconsistencies between the claimant's allegations, consultative examination, and observations of the CDI investigators."  (*Id.* (citing Tr. 161).)

[82] (*Id.*)

[83] (*Id.*)

[84] (*Id.*)

[85] (Opening Br., Doc. No. 18 at 26.)

[86] (*See* Tr. 503–09 (describing observations on 10/15/2022, 11/9/2022, 11/15/2022).)

And the ALJ reasonably characterized the observed activities as standing in "marked contrast" with Mr. D.'s self-reported limitations.[87]  As noted, Mr. D. reported using supplemental oxygen "24/7" and only removing it for ten to fifteen minutes to shower— and feeling "exhausted and winded" afterward.[88]  He also reported poor balance and feeling unsafe on his feet, and the consultative examiner observed he used his wheeled oxygen tank as a supportive device.[89]  But the investigators observed Mr. D. doing various activities without using an oxygen device and walking without apparent difficulty (including immediately after leaving the consultative examination).[90]  This included grocery shopping, walking between his car and the store (approximately 400 feet), driving, sitting in his car, scraping snow off of his car, cleaning out his car (including crawling and bending), and carrying detached oxygen tanks in both hands.[91]  The investigators observed Mr. D. had a normal gait and did not appear to struggle while walking, even when it was raining and the ground was wet.[92]  The ALJ reasonably concluded this evidence showed Mr. D. was not as limited as he claimed.

---

[87] (Tr. 26.)

[88] (Tr. 24, 53–54, 487, 490.)

[89] (Tr. 490, 495.)

[90] (*See* Tr. 503–09.)

[91] (*Id.*)

[92] (Tr. 505–06, 508.)

Mr. D. also asserts the "brief use of hands" described in the investigative report "does not undermine the medical reports."[93]  And he contends that if the ALJ had limited him to occasional use of hands, he could not perform the jobs the vocational expert identified.[94]  As an initial matter, Mr. D. makes the first assertion in a heading without supporting argument, and he does not identify what "medical reports" he is referencing.[95]  Assuming Mr. D. intends to reference the consultative examiner's opinion that he was incapable of frequent fine motor skills,[96] the ALJ did not err in rejecting this opinion.  As the ALJ noted, the consultative examiner based this opinion on Mr. D.'s "difficulty manipulating a coin" during the exam.[97]  But the investigators saw Mr. D. manipulating his keys, phone, and other small objects on several occasions.[98]  The ALJ reasonably found these activities inconsistent with the examiner's opinion regarding Mr. D.'s manipulative limitations—particularly in light of the many other inconsistencies between the consultative exam and the activities the investigators observed.

In sum, the ALJ permissibly relied on the investigative report in assessing RFC, and he reasonably concluded it undermined Mr. D.'s self-reported limitations.  Contrary to Mr. D.'s argument, the ALJ did not rely on the investigative report to the exclusion of

---

[93] (Opening Br., Doc. No. 18 at 26.)

[94] (*Id.* at 26, 28.)

[95] (*See id.* at 26.)

[96] (*See* Tr. 496.)

[97] (Tr. 27, 496.)

[98] (Tr. 507–08.)

medical evidence.  The ALJ also relied on physical examination records and objective medical evidence in assessing Mr. D.'s RFC.[99]  The investigative report and medical evidence the ALJ cited, taken together, are more than a "mere scintilla."[100]  They constitute substantial evidence supporting the RFC finding.  For these reasons, Mr. D. has demonstrated no error in the ALJ's residual functional capacity determination.

  C.  Ability to Perform Past Work (Step Four)

Finally, Mr. D. contends the Appeals Council should have remanded his case due to a change in the law regarding consideration of past work after the ALJ issued the decision.[101]  Specifically, he asserts the agency changed its rules to limit the relevant time period for past work from fifteen years to five years.[102]  And the ALJ relied on only one past job performed within five years of the decision.[103]

The court need not address the merits of this argument, because the ALJ also made an alternative finding that Mr. D. could perform other jobs in the national economy.[104]  Mr. D. has not demonstrated any error in this step-five finding.[105]

---

[99] (*See* Tr. 25–27.)

[100] *Biestek*, 587 U.S. at 103.

[101] (Opening Br., Doc. No. 1 at 26–28.)

[102] (*Id.* at 27.)

[103] (*Id.* at 28.)

[104] (Tr. 29–30.)

[105] Aside from challenging the ALJ's RFC determination (including the omission of manipulative limitations, as discussed above), Mr. D. does not raise any other claim of error relating to step five.

Accordingly, any error in finding Mr. D. capable of past work was harmless.[106]  Mr. D.

has not shown any reversible error at step four.

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 18th day of March, 2026.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[106] *See Murrell*, 43 F.3d at 1389–90 (finding no reversible error at step four where an ALJ made an alternative nondisability finding at step five).